UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 11-80WES |
| | : | |
| JUAN FUNES | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Juan Funes is in violation of the terms of his supervised release and, if so, for recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on August 8, August 27, August 29, September 4, September 25, and October 17, 2018, and January 15, 2019.

Following his initial appearance on August 8, 2018, Defendant was released on sentencing conditions with the additional bail condition of home detention with radio frequency monitoring. At the next hearing, on August 27, 2018, Defendant admitted the violations; however, immediately after that hearing, the Court was advised by Probation that Defendant had been intoxicated during his court appearance; based on that conduct, he was detained until September 4, 2018. With sobriety established, Defendant again admitted all of the violations; these admissions were accepted by the Court. Defendant was released on the same conditions (sentencing conditions, with home detention and radio frequency monitoring), as well as on the conditions that he abstain completely from the use of alcohol and submit to daily alcohol screenings, or fewer as instructed by Probation. The Court monitored Defendant's compliance

with these conditions at status conferences held on September 25 and October 17, 2018; throughout this period, Defendant sustained compliance and sobriety.  Finally, on January 15, 2019, the Court received the parties' final sentencing recommendations.  In recognition of Defendant's compliance with all conditions, bail conditions were amended to replace home detention with a curfew from 8:00 p.m. to 7:00 a.m. daily.

Based on the following analysis, Defendant's admissions, his compliance since August 27, 2018, and the parties' joint sentencing recommendation, I recommend that the Court continue Defendant on same term of supervised release with the same standard conditions, but with modified special conditions as follows:

> **Defendant shall be subject to a curfew for the first three months following the imposition of sentence and will be restricted to his residence every day from 8:00 p.m. to 7:00 a.m. as directed by the Probation Office.**
>
> **Defendant shall refrain from the use of alcohol.**
>
> **Defendant shall participate in a program of substance abuse treatment as directed and approved by the Probation Office.  Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.**
>
> **Defendant shall participate in a program of substance abuse testing (up to 72 tests per year for controlled substances and up to daily testing for alcohol) as directed and approved by the Probation Office.  Defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.**
>
> **Defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office.  Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.**

### I.  BACKGROUND

On July 13, 2018, the Court granted the Probation Office's petition for the issuance of a summons charging Defendant with the following violations:

**Violation No. 1: The defendant shall refrain from any unlawful use of a controlled substance.**

On or about November 29, 2017, Mr. Funes tested positive for cocaine, as evidenced by his positive drug test.

**Violation No. 2: The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.**

On November 29, 2017, Mr. Funes submitted to a breathalyzer test at the Probation Office which confirmed that he was legally intoxicated. On June 29, 2018, Mr. Funes submitted to a breathalyzer test at the Houston House which confirmed he was legally intoxicated.

**Violation No. 3: The defendant shall reside at a Residential Reentry Center, preferably the Houston House in Pawtucket, Rhode Island, for up to six months. While at said facility, the defendant shall comply with all the policies, procedures and regulations therein.**

On June 30, 2018, Mr. Funes left the halfway house without staff approval or United States Probation approval and failed to return.

**Violation No. 4: The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the Probation Office. The defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.**

Mr. Funes failed to report for drug testing on November 28, 2017, as well as January 8, March 23, and July 2, 2018.

Defendant initially appeared on August 8, 2018. The Court accepted his admissions to all of the violations on September 4, 2018. Based on those admissions, I found that Defendant is guilty of violating the conditions of his supervised release.

## II.     APPLICABLE LAW

Title 18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without

credit for time previously served on post-release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond five years if the instant offense was a Class A felony, three years for a Class B felony, two years for a Class C or D felony, or one year for a Class E felony or a misdemeanor. If a term of imprisonment was imposed as a result of a previous supervised release revocation, that term of imprisonment must be subtracted from the above-stated maximums to arrive at the current remaining statutory maximum sentence. In this case, Defendant was on supervision for a Class B felony for Count I and a Class C felony for Count II; therefore, he may not be required to serve more than three years imprisonment on Count I and two years imprisonment on Count II.

Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds that the defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release is life on Count I. The Court imposed the maximum three years on Count II at initial sentencing (the expiration date for this term was October 29, 2018).

Title 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG") provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon

revocation of supervised release. In this case, the authorized statutory maximum term of supervised release on Count I is life and on Count II is thirty-six months.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) of the USSG provides that a Grade A violation constitutes conduct that is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device, or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision. Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision. In this case, Defendant has committed Grade C violations; therefore, the Court may revoke, extend or modify the conditions of supervision.

Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(1) states that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to

the schedule in § 5C1.1(e) for any portion of the minimum term.  Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment.  The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

Pursuant to § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment.  In this case, Defendant failed to complete a modification for community confinement for up to six months.  Mr. Funes completed approximately three and a half months of community confinement.

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced.  In this instance, Defendant had a Criminal History Category of III at the time of his resentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range.  In this case, Defendant committed a Grade C violation and has a Criminal History Category of III.  Therefore, the applicable range of imprisonment for this violation is five to eleven months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

### III. ANALYSIS

On October 28, 2011, Defendant was sentenced to seventy months of incarceration for possession with intent to distribute heroin and possession of a firearm after a misdemeanor conviction of domestic violence. Five years of supervised release were imposed. On April 30, 2015, the sentence was reduced to time served as of November 1, 2015. Supervised release commenced on October 30, 2015, with an expiration date of October 29, 2020.

Throughout supervision, Defendant struggled with both illicit drug use and alcohol use coupled with a pattern of dangerous and violent behavior when under the influence of controlled substances or alcohol. To assist him with the symptoms of the addictive disease that seemed to be at the root of all his misconduct, Probation gave Defendant the opportunity to participate in residential substance abuse treatment twice, intensive outpatient treatment and outpatient treatment; Defendant also had significant support from his mother. Despite these advantages, Defendant persisted in non-compliance, particularly in consuming alcohol and occasionally cocaine. In response, the Court imposed escalating modifications of Defendant's conditions, first, by placing Defendant on a thirty-day curfew with radio frequency monitoring, second, by placing him in a residential substance abuse treatment program for ninety days, and third, by requiring Defendant to reside at the Houston House for up to six months. None was successful. At the Houston House, after Defendant was found smoking and engaging in an aggressive exchange with another resident while intoxicated, he refused to follow staff instructions and walked out. This conduct, which occurred on June 30, 2018, triggered the filing of the petition

charging Defendant with using cocaine and alcohol to excess, failing to report for drug testing and failing to reside in the Houston House and abide by its rules.

It is not difficult to diagnose what is going on: Defendant is an addict who has been unstable for years. By the time the petition was filed, Defendant's life was in a downward spiral, bottoming out with Defendant's decision to come to Court intoxicated on August 27, 2018.

During the months since he was briefly detained so that he could be sober to attend court and admit to the violations, Defendant has been closely supervised, including with home detention and frequent alcohol testing; he has participated in intensive outpatient treatment at Phoenix House, attended therapy sessions at Fellowship Health Resources, gone to AA meetings, and taken Vivitrol to curb his alcohol cravings under the care of his physician. With these supports, Defendant's drug and alcohol screens have been negative since August 27.[1] Defendant now has achieved five months of sobriety. He recently began to work on getting his license back, so his mother will not have to drive him to his job at the census bureau.

Based on Defendant's accomplishments, the parties agree with, and I endorse, the recommendation that Defendant continue on his current term of supervised release, but that the Court modify his conditions to add a ban on any use of alcohol and an increase in the frequency of alcohol testing so that it can be as frequently as daily, in Probation's discretion, and to impose a curfew with radio frequency monitoring for a three-month period from the date sentence is imposed. This recommendation is intended to provide Defendant with a slightly stepped-down level of support from the intensive supervision from which he has obviously benefited while released on bail during the past months. The Court notes that this recommendation is the result of Defendant's efforts to work with Probation, resulting in this extended period of sobriety. The

---

[1] A single exception occurred on December 10, 2018, when a test reflected .020 BAC due to the use of Listerine. Defendant was cautioned about the danger to him of the use of such a product and the problem did not recur.

step-down from home detention to a curfew was deliberately imposed as a bail condition on January 15 not only to reward Defendant's sobriety, but also to give Defendant the opportunity to demonstrate to the District Court that he can remain sober and compliant with his supervision conditions when the restrictions on his liberty are not as strict. The government was clear that, if Defendant begins to drift backwards, it may withdraw its recommendation not to revoke supervision.

On allocution, Defendant agreed with the parties' recommendation, stating that he is prepared to do whatever it takes to keep himself sober. He noted that one of his incentives is that his sons are now back in his life. He expressed his goal to give them the father they deserve.

Mindful of the 18 U.S.C. § 3553(a) factors that guide the Court's sentencing decision, I wholeheartedly endorse the joint recommendation of the parties that the Court not revoke or extend supervised release, but rather modify conditions during the current term by continuing the conditions that have provided Defendant with the supports that facilitated his current sobriety, continuing at the slightly stepped-down level adopted as a bail condition in January. The Court is also compelled to state the obvious – as Defendant was cautioned during the final hearing, this recommendation is based on his ability to sustain what he has achieved. If he does not, the Court's sentence should be calibrated to reflect such noncompliance.

### IV. CONCLUSION

After considering the appropriate factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that the Court continue Defendant on the same term of supervised release with the same standard conditions, but with modified special conditions as follows:

Defendant shall be subject to a curfew for the first three months following the imposition of sentence and will be restricted to his residence every day from 8:00 p.m. to 7:00 a.m. as directed by the Probation Office.

Defendant shall refrain from the use of alcohol.

Defendant shall participate in a program of substance abuse treatment as directed and approved by the Probation Office. Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.

Defendant shall participate in a program of substance abuse testing (up to 72 tests per year for controlled substances and up to daily testing for alcohol) as directed and approved by the Probation Office. Defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.

Defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office. Defendant shall contribute to the costs of such treatment based on ability to pay as determined by the probation officer.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Crim. P. 59(b); DRI LR Cr 57.2(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 28, 2019