UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 11-80WES |
| | : | |
| JUAN FUNES | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Juan Funes is in violation of the terms of his supervised release and, if so, for recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on July 23, July 25, and August 9, 2019. Immediately before the initial appearance on July 23, 2019, Probation administered a breathalyzer test, which yielded a reading of .153% BAC. In light of this serious level of intoxication, the Court conducted the initial appearance, but advised Defendant that it would be repeated after he became sober. Defendant was detained until July 25 to establish sobriety. On July 25, the Court repeated the initial appearance and Defendant waived a revocation hearing and admitted the violations as amended by the government's oral motion.[1] The Court also ordered that Defendant be detained while this matter is pending. Based on the admissions, Defendant was found guilty of violating the conditions of his supervised release. The parties made their sentencing recommendations and

---

[1] See nn. 2-4, *infra*.

Defendant presented his allocution on August 9, following which the matter was taken under advisement.

Based on Defendant's admissions and the following analysis, I recommend that the Court impose seven months of incarceration with no further supervised release.

**I.     BACKGROUND**

On July 15, 2019, the Court granted Probation's petition for the issuance of a summons charging Defendant with the four violations; on July 23, 2019, the Court granted the government's oral motion to amend the petition by adding additional conduct to the violations. As amended, the charged violations are as follows:

> **Violation No. 1: The defendant shall refrain from any unlawful use of a controlled substance.**

On or about May 24, May 29, and July 17, 2019, Mr. Funes tested positive for cocaine.[2]

> **Violation No. 2: The defendant shall report to the probation officer in a manner and frequency directed by the Court or the probation officer.**

Mr. Funes failed to report to the Probation Office as instructed on June 10, June 17, July 1, July 3, and July 22, 2019.[3]

> **Violation No. 3: The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the Probation Office. The defendant shall contribute to the costs of such testing based on ability to pay as determined by the probation officer.**

Mr. Funes failed to report for substance abuse testing on June 17 and July 2, 2019.

> **Violation No. 4: The defendant will refrain from any alcohol use.**

---

[2] On July 23, 2019, the government added the July 17, 2019, positive cocaine result by an oral motion to amend the petition.

[3] On July 23, 2019, the government added Defendant's failure to report to the Probation Office as instructed on July 22, 2019, by an oral motion to amend the petition.

  Mr. Funes admitted to drinking alcohol on June 19 and July 8, 2019.  In addition, Mr. Funes tested positive for alcohol on July 2, July 8 and July 23, 2019.[4]

Defendant initially appeared on July 23 and again on July 25, 2019; the duplication was due to Defendant's having appeared intoxicated and impaired at the first hearing.  The Court accepted his admissions on July 25, 2019.  Based on the admissions, he was found guilty of these violations of his conditions of supervised release.

  **II. APPLICABLE LAW**

  Title 18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond five years if the instant offense was a Class A felony, three years for a Class B felony, two years for a Class C or D felony, or one year for a Class E felony or a misdemeanor.  If a term of imprisonment was imposed as a result of a previous supervised release revocation, that term of imprisonment must be subtracted from the above-stated maximums to arrive at the current remaining statutory maximum sentence.  In this case, Defendant was on supervision for a Class B felony for Count I; therefore, he may not be required to serve more than three years imprisonment.

  Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds that the defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than

---

[4] On July 23, 2019, the government added the July 23, 2019, positive alcohol result (based on the test administered immediately before what had been scheduled as the initial appearance) by an oral motion to amend the petition.

3

the maximum term was previously imposed. In this case, the maximum term of supervised release is life on Count I.

Title 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG") provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release on Count I is life.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) of the USSG provides that a Grade A violation constitutes conduct that is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device, or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision. Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke

supervision. Subsection (a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision. In this case, Defendant has committed Grade C violations; therefore, the Court may revoke, extend or modify the conditions of supervision.

Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(1) states that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment. The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

Pursuant to § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment.

5

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced. In this instance, Defendant had a Criminal History Category of III at the time of his resentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed a Grade C violation and has a Criminal History Category of III. Therefore, the applicable range of imprisonment for this violation is five to eleven months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

### III. ANALYSIS[5]

On October 28, 2011, Defendant was sentenced to seventy months of incarceration for possession with intent to distribute heroin and possession of a firearm after a misdemeanor conviction of domestic violence. Five years of supervised release were imposed. On April 30, 2015, the sentence was reduced to time served as of November 1, 2015. Supervised release commenced on October 30, 2015, with an expiration of October 29, 2020. From the date of release until the summer of 2018, Probation tried to work with Defendant. To address persistent use of both illicit drugs and alcohol, the Court modified Defendant's conditions three times as Probation tried to bring him into compliance.

Nothing was successful; as a result, on July 11, 2018, Probation filed a violation petition charging Defendant with violating four conditions of supervised release. Engaging in conduct that was repeated when he initially appeared on the pending violations, Defendant responded to

---

[5] I assume the reader's familiarity with the detailed history in my report and recommendation dated January 28, 2019, regarding Defendant's first set of violations (ECF No. 61).

the Court's summons by appearing intoxicated on August 27, 2018. He had to be detained to become sober. However, despite that inauspicious beginning, in significant part due to the heroic efforts of Defendant's counsel, Probation and his family, Defendant achieved months of relative sobriety. As a result, he was leniently sentenced on May 14, 2019, by Chief Judge Smith with a modification of conditions (the addition of the condition of three months with a curfew and GPS monitoring),[6] but otherwise was continued on the same term of supervised release.

It appears that the Court's leniency was misplaced. Within ten days (on May 24, 2019), Defendant was testing positive for cocaine; within less than a month, he was failing to report to Probation; and within just over a month, he was failing to report for testing and drinking alcohol again. And Defendant's second time responding to the Court's summons by appearing in Court in a drunken state was far more serious than the first time, not only in that his BAC level was higher than the first time, but more substantively, because he was belligerent and threatening to his probation officer. Based on the danger he obviously posed, Defendant was detained and has remained so since this matter has been pending. This conduct – packed into the slightly more than two-month period between the imposition of sentence on the first set of violations (May 14) and the Court appearance on the new petition (July 23) – is the foundation for the charged violations.

For consequences, the government and Probation urge the Court to eschew the leniency that guided its course in dealing with Defendant's first set of violations. Instead, both now argue that a serious term of incarceration is called for by Defendant's latest conduct, which amounts to a significant breach of trust, particularly his reversion to cocaine use within just days of the Court's decision to adopt a lenient consequence. Both point out that the leniency that allowed

---

[6] This essentially was a slightly stepped-down continuation of a bail condition that seemingly worked well while the first set of violations was pending. ECF No. 61 at 8.

Defendant to continue with substance abuse treatment and to work and care for family did not deter him from using cocaine and failing to report; they contend that a significant sentence should be set that is sufficient, but not greater than necessary, to achieve deterrence, as well as to protect the public from the danger posed by Defendant when he is actively abusing substances. However, somewhat unusually, the government and Probation diverge in their specific recommendations, particularly with respect to whether the Court should impose a new term of supervision.

Probation requests that the Court impose five months of incarceration, which is at the low end of the guidelines range for Grade C, and that no further term of supervision be imposed. The latter proposal is based on the extraordinary level of resources that Probation has already expended on Defendant over almost four years of supervision, without any meaningful change in his behavior or choices. For the same reason, Probation disagrees with the government's recommendation that Defendant be returned to supervision to complete what amounts to the remainder of the current term. Probation also notes the difficulty of supervising an individual like Defendant for the relatively short period (approximately ten months) that would remain after the term of incarceration is completed if the government's proposal for a return to supervision were adopted. Probation's recommendation is influenced by Defendant's circumstances, which include insurance coverage adequate for intensive treatment should he decide to seek it after supervision is ended, as well as his supportive family.

By contrast, the government asks the Court to impose eight months of imprisonment, which is in the middle of the applicable range, followed by what amounts to the same term of supervised release, ending on October 29, 2020. With such a sentence, it is likely that supervision would continue for not much more than six months after the jail term ends. The

government argues that Defendant needs a severe and swift response to his conduct, which communicates clearly that his behavior is not acceptable.  The government disagrees with Probation's perspective that six to ten months of supervision is not enough time to accomplish anything meaningful, and particularly is not enough time to create an incentive for Defendant to comply.  If Defendant violates his conditions again, even during such a short period, the government argues that it can then petition the Court and request that Defendant spend the balance of the term of supervision incarcerated.

Defendant rebuts these proposals with the argument that alcoholism continues to control his life and that he is unable to maintain a sober lifestyle and deal with stressors associated with managing his disease.  Despite the treatment available to him, Defendant asks the Court to consider that he has recently been in freefall triggered in part by the extreme new stress of his son's facing serious criminal charges.  He urged the Court to consider a consequence modelled on what was done in <u>Commonwealth v. Eldred</u>, 101 N.E. 3d 911 (Mass. 2018), in which the court dealt with the conduct of a fentanyl addict who violated the condition of no-drug-use.  <u>Id.</u> at 924.  Noting that addictive disease may impair the ability of individuals to control drug use, the Supreme Judicial Court held that it was within the court's discretion first to impose and then find a violation of the condition that defendant must remain drug-free.  However, the court also endorsed the consequence imposed – detention until an inpatient treatment bed was available – as appropriate in furtherance of the rehabilitative goal of probation.  <u>Id.</u> at 925.

In light of the complexity of the sentencing decision, Defendant filed a written sentencing recommendation (ECF No. 75) on August 8, 2019.  In it, he urges the Court to select one of three alternatives, each a mix of incarceration and supervision amounting to the imposition of three months of a significant impairment of liberty, with no further supervision to follow.  In

descending preferential order, he asks that the Court order: (1) Defendant to spend one month at the Wyatt Detention Facility, followed by two months at the Houston House;[7] (2) Defendant to spend two months at the Wyatt, followed by one month at the Phoenix House;[8] or (3) Defendant to spend three months at the Wyatt. ECF No. 75 at 2. During the hearing, Defendant added a fourth option, asking the Court to sentence him to time served followed by three months of supervised release and to send him directly to the Houston House for ninety days, so that he can work (for the Census, a job he already has procured) and receive treatment, for example in the IOP program at the Phoenix House. Defendant urged the Court to understand that his actions were not meant to show disrespect, but were caused by the substance use disorder over which he has limited control.

On allocution, Defendant stated that he has been struggling with alcoholism most of his life and asked the Court to look at him as a man with a chronic disease, not as a violator of supervised release. He stated that he has lost so much to alcohol, including, at least once, almost his life. His relapses do not mean that he does not care about his conditions or that he does not want to obey Probation. While he cannot guarantee that he will not relapse again, he can commit to continue to seek help. He wants to get his life back and to be a better son and father. Defendant apologized to his probation officer for his conduct while intoxicated on July 23 and thanked his officer for helping with his son's situation. He explained his conduct as an expression of anger at himself for putting himself in this predicament just when his son needed him most. In closing, he asked for the Court's mercy.

---

[7] In not adopting an approach that is based on a term at the Houston House, I have considered Defendant's failure at the Houston House, which was addressed in the first set of violations. ECF No. 61 at 7-8.

[8] In not adopting an approach that is based on treatment at the Phoenix House, I have considered that this intervention was included as part of the lenient approach adopted for the first set of violations. ECF No. 61 at 8.

Mindful of the 18 U.S.C. § 3553(a) factors that guide the Court's sentencing decision, I recommend that a harsh and serious incarcerative consequence is required in light of the serious nature of Defendant's breach of trust.  As the only intervention not yet tried,[9] such a sentence will serve the purpose of deterring Defendant from repeating what is the most troubling aspect of his conduct – leaning into a relapse with no effort to access the sober support system he has developed as a result of the treatment he has received.  It would also serve the goal of protecting the public from Defendant's aggressiveness when intoxicated, which was displayed by Defendant's threatening behavior towards his probation officer on July 23.  In furtherance of these goals, I urge the Court to impose a sentence of seven months of incarceration, which is still towards the lower end of the applicable range.  As to further supervision, I defer to Probation's experience that the short amount of time (approximately eight months) that would remain[10] is insufficient to achieve rehabilitative goals, as well as to its appropriate concern about the unusual level of resources already invested in Defendant.  I do not recommend any more supervised release.

### IV.    CONCLUSION

After considering the appropriate factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that the Court impose seven months incarceration with no supervision to follow.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting

---

[9] See, e.g., nn. 7-8, *supra*.

[10] To be clear, the Court's authority to impose new supervision is not limited in that Defendant's statutory maximum is Life.  See 18 U.S.C. § 3583(e)(2).  Notwithstanding the potential to ask the Court to impose a new and extended term of supervision, throughout these proceedings, the parties have focused only on whether to revive some or all of the existing term ending on October 29, 2020.  Therefore, I have done the same.

party.  See Fed. R. Crim. P. 59(b); DRI LR Cr 57.2(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 27, 2019